This claimant clearly did not testify truthfully at trial about the onset or the timing of her alleged risk symptoms. She denied four times under oath that she ever had any symptoms or problems with her left hand or wrist before 2007. Before I get to that, I feel compelled to mention as a threshold matter, it appears that in your brief, as well as opposing brief, there's a number of factual assertions in the argument sections that were not connected to citations of the record. So you need to be aware of that. And then also, decisions of the Commission in unrelated cases have no precedential value. I agree. So we need to just tighten that up for future reference, okay? I agree with you. The only reason that there was a mention of a Commission decision in my brief was not for any kind of precedential value, but simply to just illustrate a point. I know that that's not binding on the Court in any way. So getting back to what I was talking about, she filled out an accident report with her own hands back in 2004, alleging at that point that she was having problems with both wrists. She sought medical treatment in 2004 with Dr. Sadiq, again reporting that she was having problems in both wrists and that she related it at that point in time to working. So she files a report with her employer saying she's having problems, that she relates to working. She tells her doctor she's having problems related to working in 2004. In 2006, she goes back and sees Dr. Analidis, again complaining at that time only of the left wrist, and again at trial denies that these things happened. And then there's also reference in the medical records to her relating to her problems beginning maybe as early as 2002 when she goes to see Dr. Mance. So either she's not telling the truth at trial or all of these prior records are false. But either way, you've got a less-than-credible situation where I think that the claimant's been impeached. Secondly ñ Well, does Durand kind of undercut where you're going with that? I don't believe so. Well, there's two issues here. One is, is there an injury in 2004, period, to begin with, versus is there an injury in 2004 and one in 2007? Or then the third solution is what the commission found, that there was only an injury in 2007. It is my position that there is no injury at any time if you look at the objective medical evidence. But her testimony is so grossly inconsistent with either of those three scenarios that, first of all, it impeaches her credibility altogether on everything she testified to. Secondly, it shows that the commission's decision that there was only an accident in 2007 is the opposite of what the ñ or is against the manifest way of the evidence using the opposite conclusion standard. Well, let's assume you ñ I think my learned colleague is correct. I think Durand does substantially undercut your argument. But removing that from the equation at the moment, isn't there other considerations, namely when her condition actually began to impair her ability at work, when she was formally diagnosed with carpal tunnel? Isn't that part of the mix here in the making this determination? Do we simply say, well, it looks like she's being disingenuous. You sort of knew she had it, so nothing else matters? Is that how we decide the case? Well, she was the one that took the initiative and filed a claim stating that she believed she had carpal tunnel. May have believed may have, right. Well, that is a big question of that may have, because throughout all of these years, she underwent four EMG studies, three of which are in the record. All of them are negative. She sees four or five different physicians at different facilities throughout all these years, always consistently complaining of the same symptoms and relating it to her work, yet only one of them, Dr. Mass, found that these symptoms were carpal tunnel syndrome. All of the other doctors looked at the evidence, looked at the EMG and said, no, you don't have carpal tunnel. Maybe you have tendonitis, maybe not, but we don't conclude carpal tunnel. Mass, of all of these doctors, is the only one who's in the dark about her prior history. He's the only one who has no reference in his records as to what her specific duties are, and in fact, the very passing reference he makes saying that she uses her left hand the majority of time at her work was contradicted by her. She said she only used her left hand to scan groceries, and that, by her account, was about 20 to 25 percent of her job. By the respondent's job description, it was 10 to 15 percent of the job. But either way, 75 percent to 85 percent of her job was doing other things, not with her left hand. She's a right-handed person. So if we're focusing on the phrase carpal tunnel syndrome, I think that that is a red herring in this case because I don't believe she has carpal tunnel. I don't think she's established that she has carpal tunnel syndrome. All she's established is that she had some symptoms in her wrist that she began complaining about back in 2004. And so far, of all the doctors that she's seen, the vast majority have found no objective evidence of any kind of an injury, much less. Well, isn't it really you sort of, in essence, without saying, you're asking us to re-weigh the evidence and re-weigh the credibility of the medical evidence. I mean, Cohen says something else than Mass does. You know, there can be some conflicting medical evidence. But at the end of the day, isn't that within the province of the commission, which medical testimony and evidence they wish to believe? That is what the rule is. I fully agree with you. The rule, though, states that the commission is supposed to draw reasonable inferences from credible evidence. Okay? And in this case, without even weighing the evidence to begin with, you have an overwhelming position where all of these doctors are in line except for one guy. You have all the objective evidence in the form of the EMG in line with the other doctors, not with this one doctor. And you have the one doctor who's going out on a limb, who clearly doesn't have an apprehension of what type of work this person does or what her past medical history is. He doesn't testify and elaborate and tell us that he, after reasonable consideration, took these things into account or took anything into account and reached this decision. All we have is a very brief office note where we don't even know what was going through his mind at the time. Let me ask you this. Legally speaking, can a claim be sustained without any medical testimony whatsoever? Yes, it can, in theory. So in theory, if you say you have a claimant, you have a physician clearly opining the causal connection, and you have some other medical reports, and that's not sufficient evidence? I don't think that that standing alone is necessarily sufficient evidence, and neither is it necessarily sufficient for a claimant to testify without any corroboration at all. In theory, it can be. You just answered it that it could be enough. No, in theory it can be, but that doesn't mean it necessarily has to be. And that's the difference. And in this case, we don't have a claimant testifying unrebuttedly as to what happened, and we don't have Dr. Mass coming in and saying, I am the only expert here, and this is my opinion, therefore, barring anything else, you better go with my opinion. But he doesn't have to be the only expert, does he? No, but he has to have. What's going on in this case basically is that a doctor can basically say whatever he wants, and if he says this is related, in spite of the fact that you have 10 or 11 pieces of evidence, all to the contrary and nothing supporting it, that therefore that's enough for the claimant? And yet the commission obviously believed him, didn't it? Apparently, but I don't know because they just signed off on the arbitrator's decision. There was no further discussion of those particular issues. Even if, though, we get to the point, assuming for the sake of argument, that Dr. Mass's opinion can withstand all of that, we still have the issue of the manifestation date. And I don't know how the commission or the arbitrator or the circuit court can reach the conclusion that the manifestation date is in 2007, when the petitioner went to such great effort to document the manifestation date with her own report and her own medical treatment. And clearly there's a long, irrefutable trail of evidence that she was aware of the fact that she had an injury to her wrists, and in her opinion that it was work-related, in April of 2004. She didn't file her application until December of 2007. The commission and the arbitrator both elected to just completely dance around that issue. There's no specific finding of why they chose the date of accident they chose. There's no specific analysis of how that compares with all of this other evidence. And there's no specific finding as to whether or not she complied with the filing requirements. The circuit court kind of excused that, saying the commission can do whatever it wants when it writes its decision. But that still doesn't address the legal issue of how can they make that finding when there's unrebutted evidence, and she herself even admitted filling out those reports well over three years before she filed her claim. Well, again, don't you come back to Duran. May have, could be. Is that sufficient to defensively hang your head on a statute of limitations violation? But then you go to Castaneda, which is almost on all fours with this. It also involved Carpal Tunnel. It also involved a claimant who clearly had documented that the injury existed and the nature of the work-relatedness and clearly waited more than three years to file her claim. And this Court said that's, that she basically hung herself on the manifestation day. She can't come back now and say there's a new manifestation day. Yeah, but Castaneda, and not to get into another debate with you on this, involved the affirmance of the decision by the commission. So when you start talking about it, it involves clearly the deference given to a commission's decision that it has to be to overturn it. It has to be against the manifest way of the evidence where an opposite conclusion is clearly apparent. You've got the opposite here. Castaneda involved affirming the commission, not reversing. So you have a little burden of proof issue in the mix here you didn't have in Castaneda. That's true. However, in Castaneda, the commission also made a specific ruling on the issue and analyzed it, whereas here we have nothing. In fact, if you read the commission's decision, you wouldn't even know that that was an issue raised at trial. But it was. In fact, if you read the record, I made an oral presentation about the issue right before the testimony was taken at trial. And so to merely frame it as, do we go against the commission's ruling on a manifest weight issue because Castaneda affirmed it and Durand affirms what the commission does, you have to have the commission take a stand. Durand did not affirm what the commission did. Well, I'm about ready to ask you whether we give the same deference to a commission's findings on the passage of the statute of limitations as we give to other factual matters in light of Durand. I think the standard of review is always the same, regardless of whether the woman in particular. In Durand, the woman obviously knew that she had been injured. She had written something that said she suspected it was work-related. The commission said the statute had been passed, and the Supreme Court said, no, it wasn't. Now, is that deference to the commission? That's no deference at all. They just reweighed the evidence upstairs and decided that they were going to say it wasn't a violation of the statute of limitations. So now the question becomes, we have a situation here where the commission has said it wasn't a violation of the statute of limitations. Do we give any deference to the commission's findings, or do we just reweigh the evidence the way they did? Counsel, you'll have an opportunity to answer that on rebuttal. Thank you. Counsel, please. Say it by the bell, Counsel. Good morning, Justices. Good morning, Mr. Pesci, if it pleases the Court. My name is Frank Cortina. I'm here as the appellee representing Ms. Newman. She's a pleasant 30-year-old hardworking woman who worked most of her young work life for all these food stores. There's no dispute as to what the evidence in the record is. There's no issues as to submission of that evidence. I think that we have not heard nor seen in appellant's brief that there is any argument that our evidence wasn't sufficient to meet our burden and support the decision of the commission and the circuit court affirming. We're certainly arguing here that the evidence is not sufficient. So to get to his point, he acknowledges Dr. Mass's opinion. It obviously establishes a causal connection with the work in the Carpool Tunnel. He's saying, in essence, as I understand it, Mass's opinion is completely flawed because he's confused about which hand, he's confused on the facts, he didn't review medical records. So tell us why Mass's opinion is not flawed. Well, I believe Dr. Mass's opinion is not flawed for several reasons. First being, he's the treating physician. He has the unique ability to meet with his patient, spend time with her, and determine what her concerns are. It has never been the decision of this court or the commission that you weigh what each doctor says, a retained expert versus a treating physician. I think the cases have clearly established that more deference can be given to a treating physician's opinion than a Section 12 opinion. And in this case, the commission specifically found that Dr. Cohen's findings, the Section 12 physician, were not credible, that Dr. Mass's findings were credible and based on the evidence. I believe it's the commission's province to make those determinations. They've looked at the evidence, and they found that Dr. Mass's opinion, even in light of the arguments of review of work studies and analysis of prior EMGs and EMCs and the nerve conduction velocity tests, even in light of those, that it's still the province of the commission to weigh that evidence and determine which is appropriate. It has never been a standard of this court that a treating physician's opinion is not given the weight that a Section 12 physician's opinion is, simply because the Section 12 opinion is based on this litigation. The treating physician here, and especially in cases of aggravation, which we're facing here, it has always been the decision of this court that the province of making those factual determinations is the commission there to try or affect. They're the weight of the evidence that's submitted and make a determination based on the credibility of the witnesses. It's the arbitrator and the commission that witnesses the testimony, sees the demeanor of the parties testifying, and makes a judgment as to credibility. In this case, they specifically found that Dr. Cohen's position was not credible. His findings were not credible or were not persuasive. They specifically addressed it. They didn't ignore Dr. Cohen's. They looked at Dr. Cohen's opinion and found that Dr. Mass's opinion should be given more weight. All right. I think you've covered that adequately. Let's turn to the statute of limitations issue. I have a two-part question. First of all, how do you respond to your opposing counsel's argument that by filing, that by making this report earlier, the claimant seemed to reference being aware, in his opinion, clearly of a carpal tunnel syndrome problem? And secondly, as my learned colleague asked the question, which counsel Farris, I did not have the opportunity to answer, understanding the commission's ruling on the statute of limitations, do we give the same degree of deference to that as we do the other issues where it's strictly a credibility issue? Well, I believe that a statute of limitations argument can be a de novo decision on your part if it's not addressed by the underlying arbitrator or commission. In this case, I think the case law is clear. You know, what has the case law told us? As in Duran, it's not simply the date when the claimant believes it may be a work-related injury. In Castaneda, it says it's not simply the last day of work. In the Meyer case, the Oscar Meyer case, which I think is more on point, it says it's not necessarily when both the employee, the employer, and the treating doctors feel that it occurred. I think it's a flexible, fair standard that has to be addressed. What is the standard? Pardon me? What is the standard? When does the statute of limitations begin to run? The standard is when the injury manifests itself so that the employee knows that it is related to their work. I think it's two parts. Number one, the employee has to know they're injured. Correct. Do they have to know that their injury is work-related, or must they merely be placed on notice that it may be? I believe that the case law has said that that knowledge is important to the claimant. They have to know that it's related to their work. So the triggering of the statute of limitations in a worker's compensation case is entirely different than the discovery of the triggering of the statute of limitations in the tort setting, where in the tort setting the plaintiff must, number one, know they're injured, and must, number two, be placed on notice that it may be the result of tortious conduct. So we don't have the merely placed on notice in the worker's compensation. They have to actually know that it's work-related. Especially in cases where we're dealing with repetitive trauma over a long period of time. And in this case, that's specifically what we have. We aren't denying that in April of 04 she had pain in her foot. Do we give any deference to the finding of the commission on that issue? I believe that complete deference should be given to the finding of the commission on that issue. Well, but in Duran the Supreme Court gave the commission no deference. In Duran there was a unique set of facts, I believe, that the Supreme Court looked at, and that is that the employee did not have knowledge at the time that it was carpal tunnel related to her work. In Duran the court basically said the claimant is not an expert. They can't say that carpal tunnel syndrome is related to their employment or caused by their employment. They could have those suspicions, but they are not an expert. And, therefore, they don't have the ability to make that medical decision that what they're experiencing is not only related to the employment but caused by the employment. And I think that's the distinction the Supreme Court in Duran brought in order to maintain a flexible, fair rule in making decisions on these. Would it be fair to say, then, in your opinion, under the holding in Duran, the statute of limitations does not begin to run until a petitioner is told, as a matter of fact, by a medical expert that, number one, she has carpal tunnel, and, number two, it's causally related to her employment. And only that will satisfy the requirements of Duran. I don't believe that Duran is establishing a hard and fast rule in this area of law, especially in repetitive trauma. I think the Duran court looked at those specific facts and felt in those specific facts that that was the appropriate ruling. I think what the entire area of the case law, including the Duran case, the Oscar Mayer case, is that the court has to look at these fact-intensive situations, determine the credibility of the witnesses in order to determine whether or not the accident manifested itself outside of the statute of limitations. But it's great if the review is anomalous and we give no deference to what the commission does. I don't dispute that, Your Honor, but what we have in this case is similar to Duran. You have an individual that had suspicion that her work was causing a problem, but she went to a doctor, and the doctor didn't say it was work-related. None of the prior doctors in this case said it was work-related until she saw Dr. Moss, and then she exercised her right under the Workers' Compensation Act. Up until that point, her mere suspicion that it may be work-related was never confirmed by any doctor. And I believe under the case law, that is the key to the manifestation data. So we're back to what I said, that under Duran, the statute of limitations does not begin to run until, number one, on employing those that are injured, and number two, they have been told by a medical professional that the injury is work-related. I don't disagree with that opinion, especially in repetitive trauma cases. Well, that's not necessarily Duran's holding either. I mean, there could be reasonable lines to disagree upon what Duran's holding is, but still it's a clean, what a reasonable person would have known as this injury and its punitive relationship to the work. I mean, that's still the question that's always been asked. And I believe that's a fact-intensive question properly in the province for the commission to determine the credibility of the witnesses that present evidence on that issue. But they reversed the commission's finding on that issue. In this particular case, you're on the right side of it because the commission determined that, you know, the commission determined that she wasn't, she wouldn't have known. In Duran, the Supreme Court just ignored what the commission did and turned around and they made the reasonable person determination. So I have my same question. Is it the noble review? On the other hand, Duran could have established whether there was sufficient evidence for the commission's finding and found there wasn't, which is back to manifest way. And I believe that is where we find ourselves today. I would like to have a hard and fast rule, as you're espousing, but I don't know that we can honestly at this point state that there is that hard and fast rule because these are fact-intensive credibility issues that the trier of fact must work their way through in light of this case law. And we have the overriding fact situation in all of these cases when the issue has been confirmed. We have an employee that has been with an employer for a long time, continues working with that employer. The only difference between this case and Oscar Meyer is in Oscar Meyer, allegedly the employer acknowledged a causal connection with the condition of ill-being. In this case, the employer didn't. Otherwise, we have the same set of facts other than this employee was not told it was carpal tunnel until after the statute of limitations would have run. This would put her in an untenable position had she had to file this matter in 2004 when she first exhibited any issues in her hand. I couldn't have proved a case for her in 2004. She was promoted to management in 2005. She was promoted again in 2006. It would be most difficult to show that there was some disabling condition of her employment back in 2004 based on this fact situation. I think clearly the arbitrator looked at that. They looked at Dr. Mosk being the first doctor to tell her that she has carpal tunnel syndrome. And just briefly on the medical evidence, I know it's not your province to re-review the medical evidence, but the facts here are Dr. Mosk was advised of what her work requirements were. Dr. Mosk found those either aggravated or caused her carpal tunnel syndrome. In this case, the doctors do not disagree. They both agree on objective symptoms. They simply disagree on what the resulting treatment and condition of ill-being is. Both doctors agreed on the objective findings that they had when they examined this woman. Thank you. Thank you, counsel. Your vote? Thank you. Well, to jump back into the Durand-Frey, I agree partially with what Mr. Cortina said, which is that there is an element of fact specificity to figuring out what the Supreme Court was trying to do with Durand. And I think it does go back to what Justice Horwitz referred to as the manifest weight standard itself. Yes, there is deference given to the commission, but it's not absolute deference. That's why there is a manifest weight standard, because in those cases where the commission decides or makes a decision that's contrary to the manifest weight, then there is no more deference given at that point. In Durand, the Supreme Court found that the way the commission went about achieving its decision in that case was not supported by the credible evidence or reasonable inferences to be drawn from it. And in that respect, I'm asking this Court to use that same type of analysis as it reviews the evidence in the record and looks at whether the commission relied on credible evidence or reasonable inferences. And it's my argument that they did not, because they took the least likely possible evidence and crafted it to achieve a result rather than looking at whether the evidence to begin with was credible. The Durand court also analyzed the Oscar Mayer decision that Mr. Cortina was referring to and concluded that you don't have to have a medical opinion. And they specifically say that in the Durand opinion. So in this case, we do have prior medical treatment, as we had in Durand. In this case, we have this accident report where she says, I have carpal tunnel syndrome and it's work-related back in 2004. I don't think that it's credible, or whatever the opposite of disingenuous is, for the claimant to show up in 2008 under oath and say, oh, I didn't know I had carpal tunnel or that it was work-related because I didn't realize that until I saw my sixth doctor in Dr. Mance. So, and then the last thing I just wanted to point out that came up during Mr. Cortina's argument. What did she say in that report back in 2004 about the carpal tunnel? Where she said carpal tunnel? What did she say? She says, here, if I can pull that. Get my copy of it out here. She says, my wrist started hurting very badly when I do my, when I do any activity. I believe it could be carpal tunnel due to stocking and ringing at the register. Could be. Yes, but then she went to a doctor and described her symptoms to him, and he did the EMG. What did he say? He said the EMG is negative, and he recommended conservative treatment for her, which she underwent for several weeks. So she may not know at that point in time that she has carpal tunnel? Well, she may not ever know she has carpal tunnel if there's no objective basis to find that she does have carpal tunnel. All of her testing was negative consistently for carpal tunnel. Dr. Cohen concluded she didn't have carpal tunnel. And so my primary position is that she never did have carpal tunnel. Her symptoms don't change between 2004 and 2007. And to get back to what Mr. Portino has asked, her job duties never changed either. Yes, she went from being a clerk to an assistant manager to a manager. But, in fact, she said that the job duties were the same. The managers are working managers for the first half of the day. They run the store. They do everything, stocking, cashiering, cleanup. And in addition to that, they have to do inventory, manage employees, maintain bookkeeping records. But during the working hours of the store, they're out doing the same thing the employees are doing. They're running the cash register, stocking shelves. And so for these reasons, we ask that you would find that the commission's decision was against the manifest way of the evidence and reverse it on all issues. Thank you. The court will take the matter under advisement for disposition.